**David GREENHOUSE et al.,**
**Plaintiffs-Appellants,**

v.

**Most Reverend Charles Pascal GRECO et al., Defendants-Appellees.**

**No. 78–1802.**

United States Court of Appeals,
Fifth Circuit.

May 19, 1980.

Benjamin P. Lamberton, Washington, D. C., for plaintiffs-appellants.

Gravel, Roy & Burnes, Camille F. Gravel, Jr., Dan E. Melichar, Alexandria, La., for Greco and other clerical defendants.

Edward L. Shaheen, U. S. Atty., Shreveport, La., Gilbert E. Andrews, Chief, App. Sec., Tax Div., M. Carr Ferguson, Drew S. Days, III, Asst. Attys. Gen., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for Joseph Califano, W. Michael Blumenthal and Jerome Kurtz.

Before AINSWORTH and HENDERSON, Circuit Judges, and HUNTER,[*] District Judge.

HENDERSON, Circuit Judge:

This court is called upon for the third time to review orders entered by the United States District Court for the Western District of Louisiana on August 2 and December 20, 1973, denying certification of an asserted class. By virtue of the district court's issuance of a Rule 54(b) certificate, we at last review these rulings. In so doing, we affirm.

The protracted litigation giving rise to this appeal began on April 3, 1972, with the filing of a class action complaint by forty-three black children attending parochial schools in Marksville and Natchitoches, Louisiana. Thirty-nine of these children were attending the all-black Holy Ghost School in Marksville, and the remaining four children attended a parochial school in Natchitoches. Suit was brought on behalf of all black children attending parochial schools in the Roman Catholic Diocese of Alexandria, Louisiana. The purpose of the suit was to end alleged racial discrimination in these schools, and the plaintiffs sought to require parochial school authorities in the diocese to prepare, adopt, and implement a plan for the operation of the parochial school system free from discrimination and segregation. The complaint named three groups of defendants: (1) the "diocesan defendants," i. e., the Bishop of the Diocese of

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Alexandria, Bishop Charles P. Greco; the diocesan school superintendent, Monsignor John Wakeman; and the diocese itself; (2) the "Marksville defendants," composed of the Congregation of St. Joseph's, a civil corporation which operated the substantially all-white Presentation School in Marksville, sued as a class defendant representing other parish corporations holding title to parochial schools in the diocese; and the School Board of the Parish of St. Joseph's as a class defendant representing all other parish school boards in the diocese; and (3) the "federal defendants," identified as the Secretary of the Department of Health, Education and Welfare, the Secretary of the Treasury, and the Commissioner of Internal Revenue. The federal defendants are not involved in this appeal.

In September of 1972, after the complaint had been filed, the Holy Ghost School and the Presentation School were paired and renamed the Marksville Catholic School. Prior to this time, the Holy Ghost School was operated by the black Holy Ghost Church and the predominately white St. Joseph's Parish operated the Presentation School.

In November, 1972, the diocesan defendants filed a Rule 23 motion to dismiss the suit as a class action. After a hearing, the district court issued its August 2, 1973, order whereby it dismissed the Congregation of St. Joseph's as a class defendant and dismissed the St. Joseph's School Board altogether. The Congregation of St. Joseph's was retained as an individual defendant.[1] Pursuant to the plaintiffs' request that the court, in effect, redefine the plaintiff class in light of the dismissal of St. Joseph's as a class defendant, a supplemental ruling was forthcoming on December 20, 1973. By this order, the district court limited the plaintiff class to the thirty-nine black students residing in Marksville and dismissed Bishop Greco, Monsignor Wakeman and the diocese as defendants.

The plaintiffs' first appeal from these orders was dismissed because the district court's refusal to certify the class was a non-appealable interlocutory order. *Greenhouse v. Greco*, 496 F.2d 213 (5th Cir. 1974). The plaintiffs subsequently made a motion, by letter, that the action be dismissed as moot. The district court entered an order dismissing the case on February 12, 1975.[2] Thereafter, the plaintiffs again sought review of the August 2nd and December 20th rulings. The defendants moved to dismiss the appeal in this court contending that the plaintiffs procured the dismissal below, thereby rendering the decree a non-appealable consent judgment. A panel of this court remanded the case to the district court with directions to enter a corrected judgment final as to all issues and parties, or if final as to less than all issues and parties, to issue a Rule 54(b) certificate. *Greenhouse v. Greco*, 544 F.2d 1302 (5th Cir. 1977).

On remand, the district court certified the claims and issues decided in the 1973 orders. As a result, we must now decide the propriety of the district court's actions in dismissing (1) the Congregation of St. Joseph's as a class defendant; (2) the School Board of the Parish of St. Joseph's; (3) the diocesan defendants; and (4) the Natchitoches plaintiffs. Absent an abuse of discretion, these rulings must stand. *Harris v. Peabody*, 611 F.2d 543 (5th Cir. 1980); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114 (5th Cir. 1975). Since the orders

---

1. The district court also ordered that the congregation of the Holy Ghost Church and the owners of the Presentation School facility be joined as parties. This portion of the August 2nd order is not directly involved in this appeal, with the exception that the appellants do maintain that Holy Ghost is already a party as a member of the defendant class.

2. The district court's reasoning was stated in its order as follows:

Matters under consideration in this suit having been reduced to the two diocesan schools in Marksville, Louisiana; these schools having been fully integrated by the parties; there being no other issues pertaining to the Marksville parochial schools remaining before the Court; and the case therefore having become moot; it is

ORDERED, ADJUDGED and DECREED that this matter be and it is hereby fully and finally dismissed.

which are the subject of this appeal were made pursuant to the defendants' motion to dismiss the suit as a class action and the plaintiffs' subsequent motion seeking clarification of the plaintiff class, we are in no way concerned with the actual merits of the original claim, and we express no opinion in that regard.

The district court's August 2nd order contains a helpful overview of the parochial school "system" as it existed in the Diocese of Alexandria at the time the suit was filed:

The Diocese of Alexandria extends over some twenty-nine civil or political parishes (counties) in central and north Louisiana. There are well over eighty Catholic church parishes or congregations all of which are legal corporations and most of which have specific geographical boundaries. These corporations have a five-man Board of Directors, consisting of three clerical or religious members and two lay members. The clerical members consist of the Bishop of the Diocese as President, the Vicar General of the Diocese as Vice President, and the Pastor of the Congregation as Secretary and Chief Operating Officer. These corporations have the usual corporate powers. They are empowered to buy and sell property, to borrow and spend money, to sue and be sued, and generally to execute any powers necessary to effectuate their corporate purposes. They are totally autonomous, neither the Bishop nor the Diocese has any legal obligation or responsibilities toward these corporations and no third party has any legal recourse against the Bishop or the Diocese on the account of claims, obligations or responsibilities incurred by these corporations. Generally speaking, each holds title to the properties occupied or utilized by it. Each sues, is sued, buys, sells, borrows, hires and fires in its own name as an independent legal entity. Each operates as a separate corporation.

With the exception of about four or five schools each parochial school is operated by one of these church corporations. The Pastor of the Church is the operating

executive of each school with advice from a School Board composed of himself and several lay members of the congregation. Each School Board is simply a committee within the church corporation which lends aid and advice in the operation of the corporation's school. It has no powers distinct from those of the parent church corporation and acts only in the name of the church corporation. It has no identity except within the corporation. Each separate church corporation exercises the sole legal responsibility for the financial support of its school, the enrollment of its students, the tuition fees, curriculum, construction and repair, athletic programs, and extra-curricular activities, employment of teachers, books and equipment, transportation and all other matters necessary and appropriate to the operation of each school. Any and all assistance rendered to each school by the Bishop and/or the Diocese is entirely voluntary. Ultimate responsibility for the operation of each school rests with the particular church corporation which it serves . . . . [T]here are presently some thirty schools of this nature operating in the Diocese.

In addition to the above parochial schools, there are certain others which are not attached or the creature of any specific church parish, such as Menard, in Alexandria, and Jesuit and St. Vincent[']s in Shreveport. The record establishes that these three, and perhaps some others, are not the creatures of individual church corporations but have some other organizational structure.

It is against this factual background that we consider the correctness of the 1973 rulings.

## THE DISMISSAL OF THE CONGREGATION OF ST. JOSEPH'S AS A CLASS DEFENDANT

In its August 2nd ruling, the district court held that the Congregation of St. Joseph's does not qualify under Fed.R. Civ.P. 23(a) as a representative of the pur-

ported defendant class.[3] We agree. By the actual terms of the complaint, St. Joseph's is sued "as a representative party on behalf of all other parish corporations in the Diocese of Alexandria which at this time, or within the last two years, have held title to an operating parochial school within the Parochial School System." As an initial matter, St. Joseph's never held title to the Presentation School facilities. Rather, the property is owned by an order of nuns. In this connection, St. Joseph's differs from other church corporations in the diocese, the vast majority of which hold title to their affiliated schools. More important, the defendant class which the appellants attempted to create encompasses church corporations which operate predominantly black parochial schools. It is extremely doubtful that St. Joseph's would fairly and adequately protect the interests of those members of the class. As the district court noted in referring to St. Joseph's representation of the Holy Ghost Parish:

> The testimony of the black witnesses at the hearing and of their pastor indicates that the Holy Ghost Church has interests, claims and purposes in common with plaintiffs, not St. Joseph's and that the interests of Holy Ghost are diametrically opposed to those of St. Joseph's. The record establishes beyond any doubt that St. Joseph's has no intention of defending the policies and interests of Holy Ghost.

Faced with these basic flaws in St. Joseph's ability to perform as a class representative, the appellants assert that the district court should have created appropriate subclasses or limited the class to white church corporations rather than denying class action treatment. However, it is unlikely that such measures would transform St. Joseph's into a proper class representative. The district court specifically found that St. Joseph's fails to meet the requirements of Rule 23(a)(2), (3), and (4), in that the questions of law and fact are not common to all church corporations, the defenses of one are not typical of the defenses of others, and St. Joseph's cannot fairly defend the interests of the class. Restricting the class to white church corporations is not likely to cure these defects. In fact, it appears that St. Joseph's was chosen as a class defendant, not because of its typicality, but because of the unique situation which existed in Marksville at the time the suit was filed. We refer to the fact that nowhere else in the diocese did two church parishes, one white and one black, occupy co-extensive geographical areas and operate parochial schools within very close proximity. The Marksville situation apparently prompted the litigation and provided the plaintiffs with a vivid illustration of the "dual parochial school system" which they allege exists throughout the diocese. Yet, this example represents an isolated occurrence rather than the rule. Moreover, we are particularly skeptical of St. Joseph's capability to represent the interests of a defendant class comprised of all white church parishes in the diocese in light of the current status of the Marksville schools. Presentation School and the Holy Ghost School were consolidated in September of 1972. Although this event took place subsequent to the filing of the complaint on April 3, 1972, the decision to pair these schools was made in the spring of 1971.[4] Thus, even at the time suit was commenced, St. Joseph's stake in the eventual outcome was much smaller than that of other white parishes in the diocese. Its strength as an advocate is, therefore, questionable.

---

**3.** The Rule 23(a) requirements are that:

 (1) the class is so numerous that joinder of all members is impracticable,

 (2) there are questions of law or fact common to the class,

 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

 (4) the representative parties will fairly and adequately protect the interests of the class.

**4.** The appellants seem to imply that the filing of the complaint precipitated the pairing of the Marksville schools. Yet their own evidence establishes that such was not the case. To the contrary, it appears that the appellants, fully aware that the schools were scheduled to be consolidated, were quick to sue before the close of the last school year during which Holy Ghost School and Presentation School were operated separately.

The district court also cited St. Joseph's unwillingness to undertake the representative role as a reason for denying certification. For obvious reasons, such a factor is far from dispositive.[5] However, we believe that the collective circumstances discussed here sufficiently support the trial court's decision to dismiss St. Joseph's as a class defendant.[6]

## THE DISMISSAL OF THE SCHOOL BOARD OF THE PARISH OF ST. JOSEPH'S

The School Board of the Parish of St. Joseph's was sued as a representative of all other school boards in the diocese. The district court was clearly correct in dismissing this defendant. The evidence indicates that there was never an entity known as "the School Board of St. Joseph's," although a Presentation School Board did exist prior to the merger of the Marksville schools. This board was merely an advisory body having no identity separate from that of St. Joseph's Parish. As such, it is not, and never has been, amenable to suit, and cannot be characterized as a proper class representative.

## THE DISMISSAL OF THE DIOCESAN DEFENDANTS

We next turn to the December 20, 1973, supplemental ruling entered pursuant to the plaintiffs' request for clarification of the plaintiff class. The district court noted at the outset that "[p]laintiffs seeking integration of [schools other than those located in Marksville] must be dismissed if there is no named defendant having the legal re-

sponsibility, capacity and authority over those schools to carry out any integration decrees which may be issued by this court." The court then went on to conclude that the diocesan defendants lacked such capacity and authority and dismissed them from the action.

The appellants urge that the district court erred in dismissing the diocesan defendants because "the parochial schools in the Diocese of Alexandria are components of a system of schools, the Bishop of Alexandria has the authority and power to control that system, and he has exercised that control in a racially discriminatory manner affecting all black parochial school children within that system." The element most crucial to this claim is the control which is alleged to emanate from the bishop and to unite all of the parochial schools in the diocese into one "system." As superintendent, Monsignor Wakeman acts only as the bishop's liaison with the schools, and any authority he possesses is admittedly derivative.

As evidence of the control exercised by the bishop, the appellants point primarily to the testimony of Father William Bassett, an expert in canon law. Father Bassett explained that, under canon law, racial harmony is a matter of moral concern. As such, it is an area in which the Church views the bishop's authority as absolute. On the other hand, Bishop Greco testified that, while he is the ultimate legislator in his diocese under canon law, as a practical matter he does not exercise any centralized control over the operation of the parochial

---

**5.** See Note, Defendant Class Actions, 91 Harv. L.Rev. 630, 639 (1978).

**6.** In concluding that St. Joseph's does not qualify as a class representative under Rule 23(a), we do not reach the more troublesome issue of whether Rule 23(b)(2), which must also be satisfied if this suit is to be maintained as a class action, applies to defendant classes. Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." The literal language of the rule indicates that it is not an appropriate basis for the certification of

a defendant class, and the Fourth Circuit recently so held. Paxman v. Campbell, 612 F.2d 848 (4th Cir. 1980). See also Mudd v. Busse, 68 F.R.D. 522 (N.D.Ind.1975); Wright & Miller, Federal Practice and Procedure, § 1775 at 21–22 (1972). Those cases allowing certification of a defendant class under Rule 23(b)(2) generally involve actions to enjoin a group of local public officials from enforcing a locally administered state statute or similar administrative policies. See Marcera v. Chinlund, 595 F.2d 1231 (2d Cir.), vacated on other grounds sub nom. Lombard v. Marcera, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), and cases cited therein.

schools. He issues policy directives to the pastors in expectation that they will be carried out, but he has no legal means of enforcing them. Monsignor Wakeman's testimony was to the same effect.

The appellants seek to use the events leading to the pairing of the Marksville schools as an illustration of the bishop's control over all the schools in the diocese. They maintain that Bishop Greco ordered that the Presentation School and the Holy Ghost School be paired by September of 1971; that he then "changed his mind and decided to continue segregation in Marksville for another year; " and that he finally directed that these schools be integrated in September, 1972. However, the evidence supports a slightly different version of these events. It appears that the pastors of the two Marksville churches approached the bishop in April, 1971, about the possibility of pairing the schools. The bishop then sent a letter to the two congregations expressing his joy at the prospect of the amalgamation. Although some church officials may have interpreted the letter as a directive, Bishop Greco testified that he never mandated the pairing of the schools. The parishoners of St. Joseph's reacted so negatively to the letter that it became apparent that integration could not be accomplished in 1971. Consequently, the bishop appointed a bi-racial commission and set September, 1972, as the date for pairing. When the integration of the Marksville schools finally took place, only sixteen white children registered. Thirteen of this number eventually withdrew due to harassment by other whites. St. Joseph's discontinued its financial support, and the bishop, in an effort to keep both facilities open, subsidized the school through mission funds. Frankly, we fail to perceive this series of frustrating experiences as at all indicative of the overwhelming control which the bishop is alleged to exert over the operation of the schools in his diocese.

The appellants also claim that the bishop's control over a centralized school system is evidenced by dealings between the diocese and certain governmental agencies. They direct our attention to documents containing assurances of compliance with the requirements of Title VI of the Civil Rights Act of 1964 which were submitted by the diocese to the Department of Health, Education and Welfare, as well as various documents submitted on behalf of the "Alexandria Diocesan School Board" to the Louisiana State Department of Education. These items were signed by Monsignor Wakeman, or his predecessor, as Superintendent of Schools, thus implying that a unified school system does exist.

Although we do not doubt that the bishop has some influence in the affairs of the parochial schools in the diocese as a practical matter, and although the evidence indicates that the schools operate as a system in dealing with outside agencies, we are nevertheless in accord with the district court's decision to dismiss the diocesan defendants. Each church corporation within the diocese is legally autonomous, and each is subject to the bishop's authority only by virtue of religious obedience to canon law. The weight wielded by the bishop consists of moral persuasion backed by possible religious sanctions. He simply does not have the legal power traditionally found in civil government, nor does he have the legal standing to carry out any integration decrees which may eventually be issued by a federal court. It is apparent that only the individual church corporations may respond in this regard.[7] Consequently, the lower court did not abuse its discretion in dismissing Bishop Greco and the other diocesan defendants.

## THE DISMISSAL OF THE NATCHITOCHES PLAINTIFFS

■ Despite the appellants' strenuous arguments that they are properly situated to represent all black parochial school students in the diocese, the absence of a defendant

---

7. In suggesting that the individual church corporations have the legal capacity to respond to an integration decree, we express no opinion as to whether a federal court may compel them to do so. Such a question lies well beyond the parameters of this appeal.

with the capacity to effectuate diocesan-wide relief precludes a class action of this scope. The dismissal of St. Joseph's as a class defendant, coupled with the dismissal of the diocesan defendants, resulted in the narrowing of the integration issue to the Marksville schools. The four named plaintiffs residing in Natchitoches have no interest in the action as it now stands, and the district court properly dismissed them. For the same reason, the class represented by the Marksville plaintiffs is necessarily limited to those black students attending the Marksville schools.

For the foregoing reasons, the rulings of the district court are

AFFIRMED.