761 F.2d 238
 CITIES SERVICE COMPANY, Plaintiff,
v.
LEE-VAC, LTD., Defendant-Third Party Plaintiff-Appellant,
American Hoist & Derrick Company, Defendant-Third Party
Defendant-Appellee,
Southwest Wire Rope, Inc., Third Party Defendant-Appellee.
 No. 84-4192.
 United States Court of Appeals,
Fifth Circuit.
 May 28, 1985.
 
 Burke & Mayer, James G. Burke, Jr., New Orleans, La., for defendant-third party plaintiff-appellant.
 Michael J. Maginnis, New Orleans, La., for Am. Hoist.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before THORNBERRY, REAVLEY and HIGGINBOTHAM, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 In an action brought by Cities Service Co. against both American Hoist & Derrick Co. and Lee-Vac, Ltd. for property damage, the district court found that Lee-Vac's negligence was the sole cause of the accident. Based on this finding the district court ordered Lee-Vac to pay Cities Service's damages and to indemnify American Hoist for the expenses of its successful defense. Lee-Vac appeals from the district court's order that it alone pay for Cities Service's damages and that it indemnify American Hoist. We reverse the indemnity part of the judgment.
 
 
 2
 The Cities Service dock on the bank of the Calcasieu River near Lake Charles, Louisiana was struck by Lee-Vac's barge, driven by its tug, in the early morning hours of July 4, 1979. At some point prior to the accident a socket, making the starboard wire rope that secured the tug and barge, failed. The socket was manufactured by American Hoist. Cities Service sued Lee-Vac and American Hoist. The latter two cross-claimed against each other. Five years after the collision and three years after the lawsuit began (an expensive period for the litigants), the relative liability of Lee-Vac and American Hoist was decided by the district judge. He awarded Cities Service its damages against Lee-Vac, absolved American Hoist of liability, and awarded American Hoist its expenses from Lee-Vac. Lee-Vac persists here.
 
 
 3
 First, Lee-Vac denies sole liability for Cities Service's damages because American Hoist's socket was found to be defective by the district court and therefore, says Lee-Vac, American Hoist should be treated as a co-tortfeasor. This evades the true disposition of the case by the trial court. American Hoist was held to be free of all liability for Cities Service's damages, because the negligent operation of the tug on the part of the employee of Lee-Vac was held to be the sole cause of those damages.
 
 
 4
 Lee-Vac squabbles about the factfinding of the district court and relies on a statement made by the judge while discussing the cause of the accident: "The evidence does not preponderate one way or the other." However, there can be no doubt but that the court did find against the existence of a causal connection between the failure of this socket and the collision of the barge into the dock. The judge at that time also said that Lee-Vac was solely responsible for the collision. In the ruling of July 27, 1983, the court said: "The sole legal cause of Cities' damages was the negligence of Lee-Vac." Upon reconsideration and by its ruling of August 16, 1983, the court said: "Though American created a defective product, the defect was not the proximate cause of the injury and therefore, American has been absolved of all liability." And in the final opinion of July 1, 1984, the court said:
 
 
 5
 It is true that at trial the court found that American Hoist had produced a defective spelter socket. However, the evidence also showed that, but for the negligence of Lee-Vac, the socket never would have failed. The accident was solely caused by Lee-Vac's negligence and without this negligence, American Hoist never would have been brought into this lawsuit.
 
 
 6
 The ruling of the court was quite clear that American Hoist contributed no cause to the collision.
 
 
 7
 Lee-Vac next argues that American Hoist is not entitled to be indemnified for its attorney's fees and costs in defending against the action brought by Cities Service. We agree.
 
 
 8
 Indemnity is a shifting of responsibility from the shoulders of one person to another, W. Prosser, The Law of Torts Sec. 51 (4th ed. 1971), and may arise either in contract or in tort, Humble Oil & Refining Co. v. Naquin, 414 F.2d 912, 914 (5th Cir.1969). In tort, indemnity may arise because of the relation of the indemnitor to the indemnitee and the consequent duty owed, because of a significant difference in the degree of their conduct, or because of a difference in character of the duties owed by the two to the injured party. W. Prosser, The Law of Torts Sec. 51 (4th ed. 1971).
 
 
 9
 The first kind of tort indemnity, predicated upon the relationship and duty owed between the parties, is illustrated in Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). In that case, a stevedoring company brought an action for indemnity against the shipowner to recover the compensation it paid to a longshoreman's widow. The Court held that the shipowner's duty of care to those on board extended to the stevedoring company and that the breach of that duty gave rise to a cause of action by the stevedoring company for any damages proximately caused. Id. at 415, 89 S.Ct. at 1150, 22 L.Ed.2d at 380. In other words, the stevedoring company and the shipowner had a special relationship and, as a consequence, the shipowner owed the stevedoring company a duty of care not to injure any of its longshoremen, thereby rendering the stevedoring company liable for compensation benefits.
 
 
 10
 The second kind of tort indemnity, where there is liability of both but a significant difference in the kind or quality of conduct of the parties, is exemplified in Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir.1969). In Tri-State, a contractor was held liable for a roughneck's personal injuries because the contractor installed the defective elevator that caused the injuries. Because the defective elevator also rendered the drilling rig unseaworthy, the owner of the rig was held jointly and severally liable for the roughneck's injuries. The court held that where the owner's liability was based on passive conduct, allowing the unseaworthiness condition to continue, and the contractor's liability was premised on active conduct, installing a defective elevator, the owner was entitled to indemnity from the contractor. Id. at 186-87.[1]
 
 
 11
 Finally, an example of the third situation in which indemnification is proper, where there is a difference in the character of duty owed to the injured party, is seen in Savoie v. La Fourche Boat Rentals, Inc., 627 F.2d 722 (5th Cir.1980). In admiralty, a seaman's employer owes the seaman a special duty to pay maintenance and cure if he becomes disabled, regardless of fault on the part of the employer. See Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). In Savoie, 627 F.2d at 723, this court held that where a seaman's employer is required to make maintenance and cure payments because the seaman is injured by a third party, the otherwise innocent employer is entitled to indemnification from the negligent third party.
 
 
 12
 This case does not fall within any of the areas of tort indemnity. First, there is no special relationship (or consequential duty owed therefrom) between American Hoist, the seller of the socket, and Lee-Vac, the shipowner, that can be compared to the shipowner's relationship with and duty owed to a stevedoring company. The buyer-seller relationship between the shipowner and the supplier of goods simply does not give rise to a duty on the shipowner's part not to act in such a manner so as to cause an injured third party to sue the supplier as a possible defendant liable for the injuries.
 
 
 13
 The second kind of tort indemnity is not proper in this case because the critical element of liability of the less blameworthy party is absent. To allow indemnity where a defendant is not held liable for the plaintiff's injuries or damages would result in the liable defendants' becoming the insurers of the legal fees of any defendants who are ultimately found not to be liable.[2] That result would be inconsistent with the American rule that prevailing litigants are not ordinarily entitled to attorney's fees from the loser. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).
 
 
 14
 Finally, tort indemnity based on the indemnitee's special duty owed to the injured party is not proper in this case. Here, American Hoist owed no special duty to Cities Service to pay for the damaged dock regardless of fault.[3]
 
 
 15
 The judgment against Lee-Vac for the damages suffered by Cities Service is affirmed; the judgment against Lee-Vac for American Hoist's expenses is reversed.
 
 
 16
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 It is doubtful whether this kind of tort indemnity will ever arise again, given the change in the law in this circuit since Tri-State. In Loose v. Offshore Navigation, Inc., 670 F.2d 493, 498-502 (5th Cir.1982), this court abandoned indemnity based on the concept of active/passive conduct in favor of contribution among tortfeasors based on their degree of responsibility. Furthermore, in Odd Bergs Tankrederi A/S v. S/T Gulfspray, 650 F.2d 652, 655 (5th Cir.1981), this court held that attorneys' fees and legal costs incurred by a defending tortfeasor are not recoverable by way of contribution from other parties who are liable
 
 
 [2]
 American Hoist cites Cotten v. Two "R" Drilling Co., 508 F.2d 669, 670 (5th Cir.1975), to support its claim that defendants who are found not to be liable are entitled to be indemnified for attorneys' fees and costs from defendants who are found to be liable. There was dictum in Cotten to the effect that, if a defendant whose passive conduct renders him liable is entitled to indemnity, then a defendant guilty of no fault should also be so entitled; however, the right to indemnification in Cotten was in fact based on the special relationship and consequential duty between the shipowner/indemnitor and an independent contractor/indemnitee whose employee was injured aboard the vessel. Id. at 671. Although we might question whether the relationship/duty type of indemnity should have been extended to cases in which the indemnitee was not held liable for the underlying damages, our answer is simply that, as discussed earlier, there is no relationship or duty owed between Lee-Vac and American Hoist that calls for indemnity in this case
 
 
 [3]
 Lee-Vac also urges a redhibition claim against American Hoist for the value of the failed socket, but it raised this claim only by a post-trial memorandum to the district court. No previous allegation or claim for those damages had been made. The district judge properly ruled that the case had been tried and ruled upon and that this claim came too late for consideration