Hubert J. WEDLOCK, Plaintiff,

v.

GULF MISSISSIPPI MARINE
CORP., Defendant.

J. RAY McDERMOTT & CO., INC.,
Defendant-Appellee,

v.

DeFELICE MARINE CONTRACTORS,
INC., et al., Defendants-Appellants.

No. 76–3943
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 20, 1977.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

down the hatch that appellee failed to cover. This case presents the question whether the appellee must now cover a portion of the settlement and defense costs borne out of Wedlock's suit for damages.

The appellant, DeFelice Marine Contractors, Inc., employed Wedlock as a deckhand on its tug, the M/V Miriam M. DeFelice. The appellee, J. Ray McDermott & Co., chartered the tug and crew to tow its barge, the Oceana 91. One evening the captain of the tug ordered Wedlock onto the barge to free a tow line. Wedlock was injured when a spotlight beam from the tug blinded him and he fell into an open hatch on the deck of the barge.

Wedlock sued DeFelice and McDermott as joint tortfeasors but settled prior to trial. DeFelice and McDermott contributed equal amounts to the settlement fund and defense costs, then submitted to the court by stipulation McDermott's cross-claim against DeFelice and its insurers for indemnity.

Edgar F. Barnett, Lake Charles, La., for DeFelice Marine Contractors.

Joy S. Miller, New Orleans, La., for Lloyds.

John G. Torian, II, Lafayette, La., for J. Ray McDermott & Co.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

The original plaintiff in this seagoing affair, Hubert Wedlock, has long since gone

■ The district court found, and neither party now disputes, that the proximate causes of Wedlock's accident were (1) McDermott's negligently delivering a barge with an open hatch cover, and (2) DeFelice's crew's negligently shining a spotlight in Wedlock's eyes.[1] The court also held, and neither party disputes, that McDermott could not recover against DeFelice under either an implied indemnity theory or under the express indemnity provision in a charter agreement between the parties.[2] The court nevertheless held that McDermott was entitled to indemnity from DeFelice's insurers by virtue of its designation as an "additional assured" in DeFelice's insurance policy covering the tug. We reverse.

---

1. The court found that a third party named in Wedlock's original suit, Gulf Mississippi Marine Corp., was not liable to Wedlock.

2. A party may contract against liability for its own negligence, but such an agreement must clearly indicate the intention of the parties. It may not be presumed that a mere agreement to indemnify includes indemnity for the indemnitee's own negligence. The district court properly concluded that the indemnity language in the charter agreement was too general to cover McDermott's own negligence. *See United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie*, 424 F.2d 684 (5th Cir. 1970); *Batson-Cook Co. v. Industrial Steel Erectors*, 257 F.2d 410 (5th Cir. 1958).

The precise question is whether DeFelice's standard Protection and Indemnity (P&I) policy on the tug covered a liability of the charterer that arose from its negligent acts with respect to the charterer's own vessel. That McDermott was an "additional assured" under DeFelice's policy covering the tug is undisputed.[3] There is no question that McDermott was protected from liability arising from the operation of the tug to the same extent as DeFelice. The question here is, rather, to what extent DeFelice's policy covered McDermott's liability with respect to the barge.

■ The limits of McDermott's coverage as additional assured are prescribed in DeFelice's insurance policy in the same clause guaranteeing that protection:

It is understood and agreed that as respects all vessels covered hereunder, J. Ray McDermott & Co., Inc. is named as an additional assured.

In short, DeFelice's policy covers McDermott's liability only "as respects" the "covered" vessel—here, the Miriam M. DeFelice. The Oceana 91 was not listed as a "covered vessel" under that policy. That is, the insurance policy does not purport to cover McDermott's liability for acts of negligence committed *qua* barge-owner, rather than *qua* charterer.

The district court's contrary decision appears to be predicated on the notion that because the tug's crew was more directly and actively responsible for the accident, DeFelice and its insurers should bear the entire cost of settlement and McDermott should be wholly indemnified. The lower court reasoned that the parties did not intend for the barge to be manned during its towing. Appellee adds that McDermott's leaving open the hatch cover was mere "passive" negligence.

■ The notion that McDermott was passively negligent and DeFelice's insurers should therefore fully cover the liability arising from McDermott's negligence is mistaken, we think, in two respects. First, insofar as the passive-active negligence distinction may affect indemnification between joint tortfeasors, that doctrine is foreclosed here. The district court held, and neither party disputes, that McDermott could not recover against DeFelice on either an implied or an express indemnity theory. In short, McDermott's sole hope for reimbursement of its contribution was based on the notion that DeFelice's insurance policy covered its liability. This distinguishes the case at bar from one in which a passively negligent joint tortfeasor may recover against the actively negligent tortfeasor. *See Kelloch v. S & H Subwater Salvage, Inc.*, 473 F.2d 767 (5th Cir. 1973); *Constance v. Johnston Drilling Co.*, 422 F.2d 369 (5th Cir. 1970); *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178 (5th Cir. 1969). Were the passively negligent barge-owner indemnified against its liability by the actively negligent tug-owner, one might say that all liability for the accident had arisen with respect to the tug and, hence, the tug-owner's insurance company would be obligated to pay. Here, however, the unchallenged conclusion of the

3. The standard charter agreement in effect at all times between DeFelice and McDermott provided that DeFelice would procure and maintain insurance and would name McDermott as an additional insured in the policies. The insurance agreement itself specifically provided for additional insureds:

Privilege is hereby granted to the assured to name others for whom the assured is performing work as additional assureds on this policy, provided the assured has exercised this option prior to loss.

The policy further provided that should DeFelice charter one of the vessels insured, the charterer might be designated an additional assured:

Anything herein contained to the contrary notwithstanding, it is hereby understood and agreed that the assured shall have the privilege of chartering, other than bare-boat chartering, the within insured vessel for hire or otherwise, its being agreed that for the duration of such charter, this insurance, subject to the conditions of the policy, shall cover for the account of the owner and charterer as interest may appear.

district court is that the ostensibly passively negligent barge-owner cannot recover against the tug-owner in the first instance because the indemnity provision does not cover the barge owner's negligence. *See* note 2, *supra.*

■ Second, however, it makes little sense to say that McDermott was merely passively negligent. The district court does not expressly so find, although its decision appears based on some such notion. Leaving open a hatch on the barge does not constitute mere technical, vicarious, or passive negligence as those terms have been used. Indeed, the classic case of passive negligence occurs only when one joint tortfeasor creates a danger that the other (passive) tortfeasor merely fails to discover or to remedy. *See* W. Prosser, *Handbook of the Law of Torts* § 51 (4th ed. 1971). For example, in *Kelloch v. S & H Subwater Salvage, Inc., supra,* 473 F.2d at 769, S & H's salvage crew spilled oil on the deck of a vessel chartered from Sharecroppers, causing plaintiff to fall. Sharecroppers sought indemnity from S & H. The court found that although S & H had spilled the oil, the mere presence of oil on the deck of Sharecroppers' vessel meant that Sharecroppers was technically liable for breaching its non-delegable duty to provide a seaworthy vessel. As in the classic case of passive negligence, the indemnitor created the danger that the indemnitee merely failed to discover or remedy. Because Sharecroppers' liability was thus founded on passive negligence, the court held that Sharecroppers was entitled to full indemnity from S & H.

By contrast, McDonald's leaving open the hatch independently created a potential danger.[4] This was a negligent omission that was a proximate cause of the accident; hence McDermott was not simply passive or vicariously negligent. The passive negli-

gence doctrine has been held inapplicable where the would-be indemnitee is guilty of acts or omissions that could have proximately caused the injury complained of. *See Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, supra,* 424 F.2d at 693; *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.,* 420 F.2d 1103, 1111 (5th Cir. 1970).

Both McDermott and DeFelice were negligent in causing Wedlock's accident— McDermott in respect of the barge, DeFelice in respect of the tug's crew. We find nothing in the insurance policy or the record to indicate that by insuring the tug DeFelice's insurers intended to insure against McDermott's negligence as a barge-owner.

The appellee relies on a negative inference from *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir. 1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972). In that case a member of a crew boat under time charter to Chevron was injured when a crane operator on Chevron's offshore drilling platform negligently struck the seaman while lowering a heavy load to the boat. Chevron, an additional insured under the standard P & I policy covering the boat, sought indemnity for its liability to the seaman. This court rejected Chevron's claim because the vessel and her crew were absolved from all wrong. The court said:

> There must be at least some causal operational relation between the vessel and the resulting injury. The line may be a wavy one between coverage and noncoverage . . . . But where injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury. Nothing more occurred here, for it was Chevron's actions as a platform operator . . . that caused the harm and that does not make it a liability of a shipowner.

4. The record suggests that the crew of another of McDermott's vessels, Derrick Barge 19, neglected to replace the hatch covers on the Oceana 91. Crewmen from Derrick Barge 19 were observed pumping out sea-

water ballast in the Oceana 91 several hours prior to Wedlock's fall. The hatches on deck allow access to the barge's multiple seawater ballast tanks.

*Id.* at 584. It is, of course, the broad language of that opinion that gives comfort to appellee here. McDermott reasons that there was "some causal operational relation" between the tug and the accident.

*Lanasse*, however, establishes only that showing "some causal relation" brings the liability within the insurance policy on the covered vessel. It does not address the question of the extent of such coverage. It is entirely consistent with *Lanasse* to say that the insurance policy covers liability arising from the accident only to the extent the accident is caused by the covered vessel.

In *Lanasse*, the vessel caused no part of the injury; hence the charterer was unable to recover as an additional assured and bore the full cost of the accident. In the case at bar, negligence of the tug's crew was one of two proximate causes of the accident, and hence we should require the tug's insurer to bear some but not all of the loss. We leave the cost of the accident to be shared by the tug-owner and barge-owner in the amount of their respective contributions. *Lanasse*, after all, emphasizes that Chevron could not recover from the insurer of the tug because Chevron's liability arose *qua* platform operator rather than *qua* shipowner (or charterer). Similarly, McDermott's liability arose as that of a barge-owner, not as an owner or charterer of the covered vessel.

In *Dow Chemical Co. v. Tug "Thomas Allen"*, 349 F.Supp. 1354, 1364 (E.D.La. 1972), the court reasoned along precisely these lines. Dow owned a barge pulled by the insured's tug. The P & I policy on the tug named Dow an additional insured as charterer. When the barge operator insisted on proceeding through a channel despite the absence of pipeline charts, the tug's captain acquiesced. As a result, the tug collided with a gas pipeline. The ensuing explosion and fire injured a seaman on the barge and damaged the barge itself.

The court found the barge and tug operators jointly negligent in causing the injury.

Accordingly, the court limited Dow's coverage under the policy to that attributable to the tug's negligence. The court said:

> Although the tug's P & I policy names Dow as an additional assured, the coverage afforded thereunder is limited to the assured's liability "in respect of" the insured vessel, i. e., the Tug THOMAS ALLEN. Dow, therefore, is afforded no coverage under this policy except with respect to fault on the part of the THOMAS ALLEN or the negligence of her crew. Dow's liability in this case arises from its negligence as a barge owner, or more importantly, a service company anxious to perform services for its customers without a delay. No such coverage was provided by [the P & I insurers].

*Id.* at 1364–5.

The same principle controls the case at bar. McDermott's liability for its share of the settlement in favor of Wedlock was predicated upon its acts as owner of the barge, not on negligent acts with respect to the covered vessel.[5] Both McDermott and DeFelice have discharged their respective responsibilities for the accident by contributing to the settlement fund, and we decline further to shift the loss.

The judgment of the district court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**

5. Appellee argues for the first time on appeal that even if it is not entitled to indemnity under the P & I policy, it should nevertheless recover its costs of defense on the theory that the P & I insurer owed it a defense, since the insurer's duty to defend is greater than its duty to pay. We leave the resolution of this issue to the district court on remand.