**The DOW CHEMICAL COMPANY,
Plaintiff-Appellant,**

**v.**

**The M/V ROBERTA TABOR, and M/V
SUGARLAND etc., et al.,
Defendants,**

**American River Transportation
Company and Scott Chotin,
Inc., Defendants-Appellees.**

**Nos. 85–3388, 86–3251.**

United States Court of Appeals,
Fifth Circuit.

May 4, 1987.

Richard B. Foster, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for Dow Chemical Co.

Robert T. Lemon, II, Jones, Walker, Waechter, Poitenent, Carrer & Denegre, New Orleans, La., for American River Transp.

Paul N. Vance, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Scott Chotin, Inc.

Before REAVLEY and RANDALL, Circuit Judges, and WOODWARD,[*] District Judge.

RANDALL, Circuit Judge:

Dow Chemical Company ("Dow") appeals the district court's judgment denying Dow's claim for loss of use damages against American River Transportation Company ("Artco") and awarding Scott Chotin, Inc. ("Chotin") attorneys' fees and costs against Dow. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

---

[*] District Judge of the Northern District of Texas, sitting by designation.

1. Clause 14 of the Bareboat Charter Party provides as follows:

 14. Charterer agrees to maintain in force at Charterer's expense, Standard River form Hull Insurance with full collision coverage in the amount of *See Table 'A'* for the barge(s). Charterer also agrees to maintain in force at Charter's expense, Protection and Indemnity Insurance in the amount of *See Table 'A'* for the barge(s).
 Deductibles for Hull Insurance and for Protection and Indemnity Insurance on the barge(s) will be for the Charterer's account. Owner warrants the full value of the barges to be *See Table 'A'.* Scott Chotin, Inc. shall be designated as Owner and as co-assured on the Hull Insurance and on the Protection and Indemnity Insurance as its interests may appear. Charterer shall provide Owner with written confirmation of insurance from its

## I.

This litigation arose out of a collision between two tugs in the lower Mississippi River on September 20, 1979. The tugs were the M/V *Roberta Tabor*, owned by Artco, and the M/V *Sugarland*, owned by Chotin, but fully chartered to Dow. Three barges were damaged as a result of the collision: The barge ART–488, which was owned by Artco and which was in the tow of the *Roberta Tabor*, and the barges PTC–501 and SC–303L, which were bareboat chartered by Dow and which were in the tow of the *Sugarland.*

The charter agreement ("Bareboat Charter Party") between Dow and Chotin for the barge SC–303L required Dow to obtain hull insurance and protection and indemnity ("P & I") insurance on the barge and to name Chotin as an additional assured with a waiver of subrogation. Dow could, however, elect to self-insure.[1] If Dow elected to self-insure, however, the charter agreement provided that Dow was to pay Chotin for any losses, and was to indemnify Chotin for any claims that would have been covered by insurance, including reasonable attorneys' fees and costs.[2]

The towing contract ("Fully Found Charter Out of Boat") for the *Sugarland* required Dow to obtain hull and P & I insurance on the barges to be towed, to name

underwriters and shall provide Owner with waiver of subrogation.

. . . Owner agrees that Charterer may at its option and upon written notice to the Owner elect to be self-insured.

2. Paragraph 16 of the Bareboat Charter Party provides in full as follows:

 16. Should insurance or any part thereof be vitiated, avoided or impaired because of the act or omission of the Charterer or anyone for whom the Charterer is responsible, the Charterer shall promptly pay to Owner any and all losses and will indemnify and save harmless the Owner and all of the equipment [sic] herein included from any and all claims, suits, judgements, demands, costs and expenses in connection therewith that would have been otherwise covered by the insurance and all reasonable attorney's fees, costs, and disbursements and expenses inconnection [sic] therewith.

Chotin as an additional assured on the P & I policies, and to waive subrogation on the hull policies. The fully found charter required Chotin to obtain hull, P & I, and tower's liability insurance on the *Sugarland.* The fully found charter also provided that if Dow elected to self-insure, Dow would defend and indemnify Chotin to the same extent as would be required if Dow had purchased the specified insurance coverage.[3] There is no dispute that Dow in fact elected to self-insure for losses under $1 million, and that Chotin was not named as an additional assured in Dow's hull and P & I insurance policies covering losses in excess of $1 million. Finally, the fully found charter purported to relieve Chotin of any liability for negligent towing.[4]

## II.

On December 27, 1982, Dow sued Artco and Chotin for the damage to the barges and for the loss of their use. On February 9, 1983, Artco answered Dow's complaint and cross-claimed against Chotin for indemnity and contribution for its liability, if any, to Dow, and for damage to its barge, the ART–488. Chotin defended against Dow's claim for damage to and loss of use of the barges and against Artco's cross-claim for indemnity and contribution, and Artco's claim for damage to its barge. On February 25, 1985, Chotin filed a counter-claim against Dow for indemnity from its liability, if any, to Artco and for attorneys' fees

and costs incurred in defending against Dow's claims.

On March 7 and 8, 1985, the case was tried to the district court. On March 8, 1985, the district court issued its findings of fact and conclusions of law from the bench. The district court found that the negligence of the *Roberta Tabor* was the sole cause of the collision. The district court held that Dow was therefore entitled to recover from Artco $28,645.03, the stipulated amount of the physical damage to the barges chartered by Dow. On Dow's loss of use claim, however, the district court held that Dow had failed to prove by a preponderance of the evidence the amount of its loss. The district court stated that Dow had failed to establish that it had no other substitute barges available to replace the two damaged barges, or that it had to turn away business due to the temporary loss of the barges. Hence, the district court denied Dow's loss of use claim. Finally, the district court granted Dow prejudgment interest from the date of the collision.

On March 22, 1985, the district court entered judgment in favor of Dow and against Artco for $28,645.03, plus prejudgment interest and costs. The court also entered judgment in favor of Chotin and the *Sugarland* and against Dow on Dow's claim for damages and against Artco on Artco's cross-claims for indemnity and contribution and for damage to its barge.

3. Clause 11 of the Fully Found Charter Out of Boat provides in full as follows:

11. INSURANCE: Owner shall provide at its expense and for its account full form Hull and Machinery and Protection and Indemnity Insurance including Tower's Liability to the full value of the vessel.

Charterer agrees to obtain at its expense and keep in full force and effect for the life of this agreement, full form hull insurance and P & I insurance on any barges or floating equipemnt [sic] to be towed, not furnished by owner, and full form cargo insurance on all cargos to be transported in or on the barges to the full insurable values thereof, naming Owner and its Boat as co-assureds under such P & I clauses and having all its underwriters waive all rights to subrogation in force against Owner, its Boat, Operators, agents, managers and parties at interest therin [sic] under such hull and cargo insurance. Char-

terer will pay all deductibles under said policies. In the event Charterer shall fail or elect not to procure and maintain required insurance, Charterer shall defend and indemnify Owner and its Boat to the same extent that protection would have been provided had required insurance been maintained and in force.

4. Clause 12 of the Fully Found Charter Out of Boat provides in relevant part as follows:

12. FORCE MAJEURE: The Boat, its captain and owner shall not unless otherwise in this charter expressly provided, be responsible or liable in any was [sic] for any loss or damage for any failure or delay in the performance hereunder, arising or resulting from: any act, neglect, default or barratry of the master pilots, mariners, or other servants of Owner in navigation or management of the Tow....

In its findings and conclusions disposing of the above claims, the district court did not rule on Chotin's claim against Dow for attorneys' fees and costs, but instead instructed the parties to pursue that claim in a supplemental proceeding. In essence, the basis for Chotin's counter-claim for damages was that Dow's claim against Chotin constituted a breach of Dow's obligations under the charter parties to defend and indemnify Chotin against such claims. In response, Dow argued that the insurance that it was obligated to obtain would only have required it to indemnify Chotin for claims based on the negligence of the vessels named in the insurance policies, i.e., the barges, and not the negligence of the *Sugarland*. Therefore, Dow argued, since its suit against Chotin was based upon the negligence of the *Sugarland*, it had no duty to indemnify Chotin for the costs in defending that action.

After receiving additional briefing by Dow and Chotin on the issue of Chotin's counter-claim for attorneys' fees and costs, the district court issued its first set of findings of fact and conclusions of law relating to Chotin's counter-claim. In this set of findings and conclusions, the district court stated that in order to determine whether Dow could properly maintain its claim against Chotin, it was necessary to determine what the effect would have been of the insurance that Dow was to provide under the Bareboat Charter Party and the Fully Found Charter Out of Boat. The district court, after examining the provisions of the charter parties and standard maritime hull insurance policies, concluded that the barge insurance specified in the charter parties would not have provided for the defense or indemnification of Chotin against the claims asserted by Dow. Hence, the district court held that Chotin could not recover attorneys' fees and costs from Dow because the policies required under the charter parties would not have covered losses stemming from the negligent operation of the *Sugarland*. Finally, the district court also held that the clause in the fully found charter purporting to relieve Chotin for any negligence in the operation of the *Sugarland* was void as against public policy. On June 3, 1985, judgment was entered in favor of Dow on Chotin's counter-claim.

On June 10, 1985, Chotin filed a motion to amend the judgment. In a minute entry of August 16, 1985, the district court granted Chotin's motion to amend. The district court held that since Dow elected to self-insure, it was effectively Chotin's hull underwriter for the barges, and that Dow therefore could not maintain a suit against its own assured. The district court held that in bringing such a suit, Dow was in breach of its contractual obligations to Chotin under the charter parties, and was therefore liable to Chotin for the attorneys' fees expended by Chotin in defending against Dow's claim. The court instructed Chotin to submit either a stipulated amount of attorneys' fees or an affidavit on the amount of attorneys' fees. After more briefing and argument by the parties on the issue of the quantum of attorneys' fees to be awarded Chotin, the district court, in a minute entry dated February 25, 1986, concluded that all of the reasonable attorneys' fees and costs incurred by Chotin in connection with this case were the direct and foreseeable result of Dow's bringing suit in breach of the charter parties. The district court therefore awarded Chotin attorneys' fees in the amount of $24,489.48. An order reflecting this minute entry was entered on March 18, 1986.

On March 27, 1986, Dow filed its notice of appeal from this judgment and from the judgment of March 21, 1985. On April 3, 1986, Artco filed its notice of cross-appeal. Amended notices of appeal were filed by Dow and Artco on April 9 and 10, 1986, to correct errors in the stated date of the district court's March 18, 1986 Order.

On appeal, Dow argues that the district court erred in holding that Dow had failed to prove its loss of use damages with reasonable certainty, erred in holding that Dow could not sue Chotin without breaching the charter agreements, and erred in holding that all of Chotin's attorneys' fees were a result of Dow's suit against Chotin. After setting out the applicable standard of

review, we will address each of Dow's contentions separately.

## III.

 Our standard of review of decisions of district courts sitting in admiralty is well-settled. "[F]indings of fact by the trial court in admiralty cases are subject to the clearly erroneous rule. However, when essentially based on an incorrect legal principle, Rule 52(a) clearly erroneous does not apply and we disregard any such possible findings." *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1000 (5th Cir.1984), *modified in part on rehearing*, 753 F.2d 378 (5th Cir.1985). Conclusions of law made by district courts in admiralty cases are, of course, subject to *de novo* review by this court. *Crisis Transp. Co. v. M/V Erlangen Express*, 794 F.2d 185, 187 n. 5 (5th Cir.1986). Questions of contract interpretation are questions of law subject to *de novo* review. *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 189 (5th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). "In an admiralty action, the district court's determination of damages ... is a factual finding subject to the clearly erroneous standard of review." *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 592 (5th Cir.1986). With these principles in mind, we turn to our consideration of Dow's arguments.

## IV.

### A. Loss of Use Damages:

It is well-settled in this circuit that "[l]oss of profits or loss of the use of a vessel pending repair arising from a collision or a maritime casualty is a proper element of damages provided, however, profits are proved with reasonable certainty." *Delta S.S. Lines, Inc.*, 747 F.2d at 1000.

Damages for lost profits arising from the loss of use of a vessel for repairs after a collision or other maritime tort has traditionally been called detention. Detention is allowed "when profits have actually been, or may reasonably [been shown] to have been, lost, and the amount of such profits is proved with reasonable certainty." *The Conqueror*, 1897, 166 U.S. 110, 125, 17 S.Ct. 510, 516, 41 L.Ed. 937. The burden of establishing that profits were lost is upon the shipowner. *Skou v. United States*, 5 Cir., 1973, 478 F.2d 343, 345.

*Boliver County Gravel Co. v. Thomas Marine Co.*, 585 F.2d 1306, 1308 n. 2 (5th Cir.1978). Dow argues that the district court erred in holding that, because Dow had failed to show that it lost profits because the barges were retained, Dow had not met its burden of proving its damages for loss of use with reasonable certainty. Dow claims that the barges were not income-producing, in that they were to be used exclusively to move Dow products from one location to another, and that therefore it is unreasonable to require Dow to demonstrate the profit that it would have earned from the barges during the period that they were out of service for repairs. Dow argues that in a case where a barge generates no income, but only expense, the proper measure of damages for loss of use should be the charter hire paid by Dow for the barges during the period that they were being repaired.

 We recognize that "there is not just one method of calculating detention damages." *Delta S.S. Lines*, 753 F.2d at 379. However, without deciding whether Dow's measure of damages is correct, we hold that even if we were to accept the cost of the charter hire for the damaged barges as the proper measure of detention damages, we would still affirm the district court's conclusion that Dow failed to prove its damages with reasonable certainty. This is because Dow failed to prove that it had no excess barge capacity with which to move its products during the period that the damaged barges were being repaired. It is clear to this court that, if Dow were able to move the same amount of its product with other barges chartered or owned by it while the damaged barges were being repaired, there would be no financial loss to Dow despite the fact that Dow was obligated to continue to pay charter hire on the damaged barges. In response to question-

ing on cross-examination by counsel for Artco, Thomas G. Pence, the business manager for marine transportation at Dow, testified that although it was "safe to say" that all of the other barges owned or chartered by Dow during the period of time that the damaged barges were out of service were "earning money," Dow did nothing more to substantiate this claim.[5] Given Dow's failure to demonstrate that it had no extra barges with which to move its product at the time that the damaged barges were being repaired, the district court could reasonably have concluded that Dow's existing capacity was sufficient to accommodate the cargo that the damaged barges would have carried. We cannot say that the district court's conclusion that Dow failed to prove its loss of use damages with reasonable certainty is clearly erroneous. *Cf. Brooklyn E. Dist. Term. Ry. v. United States,* 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932) (disallowing damages for loss of use of damaged tug when tug owner's other two tugs were able to perform the work of the damaged tug); *Domar Ocean Transp., Ltd. v. M/V Andrew Martin,* 754 F.2d 616, 620 (5th Cir.1985) (holding that the district court correctly required proof that substitute vessels used to replace damaged vessels would otherwise have been hired during the substitution period); *Inland Oil Transp. Co. v. Ark-White Towing Co.,* 696 F.2d 321, 326–27 (5th Cir.1983) (disallowing detention damages where there was no proof that damaged barges would have been chartered during a part of the time that they were under repair). Hence, we affirm the district court's conclusion that Dow failed to prove its loss of use damages with reasonable certainty.

---

5. Dow also failed to prove traditional "lost profit" damages for detainage. Mr. Pence also testified that the Dow chemicals to be transported by the damaged barges could have been transported by rail at additional expense, but that Dow did not do this, that no Dow plants had to be shut down because the damaged barges were unable to carry their cargoes, that he did not know of any deliveries that were not made to Dow customers as a result of the barges being out of use, and that, so far as he knew, the cargo that the damaged barges were to carry ultimately reached its destination. Another

### B. Dow's Suit Against Chotin:

Turning to the second issue in this appeal, Dow argues that the district court erred in holding that the insurance provisions in the charter parties prevented Dow from suing Chotin for loss of use and hull damage to the barges. Dow argues that, had it obtained the requisite hull and P & I insurance, such insurance would only have insured Chotin for liability arising from the fault of the named vessel, in this case the barges, and would not have insured Chotin for liability for its negligence in the operation of the *Sugarland.* Dow also argues that, in any case, the hull and P & I policies that it was obligated to obtain would not have provided coverage for the loss of use of the damaged barges, and that Dow therefore was not Chotin's insurer with respect to these damages. Hence, Dow argues, the charter agreements did not prohibit Dow from suing Chotin for the loss of use of the barges.

■ Turning to Dow's first argument, that the insurance provisions would not have indemnified Chotin for its liability for negligent operation of the *Sugarland,* we hold that this argument is foreclosed by recent decisions of this court which hold that an insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for a risk covered by the policy. *See Marathon Oil Co. v. Mid-Continent Underwriters,* 786 F.2d 1301 (5th Cir.1986); *Wiley v. Offshore Painting Contractors, Inc.,* 711 F.2d 602 (5th Cir.), *on rehearing,* 716 F.2d 256 (5th Cir.1983). In *Marathon,* this court stated:

> Dow witness, K. Don Smith, the superintendent of Dow's inland marine services, Louisiana division, testified on cross-examination that no additional barges were requested by Dow to replace the damaged barges, no rail or other method of transportation was utilized during the period of time that the barges were out of service, no additional storage facilities were required during this period, and no late charges were incurred by Dow as a result of the damaged barges being out of service. *See* First Supp. Record at 92–108, 114–19.

The underwriters that wrote a policy containing a provision waiving "all subrogation" against an additional assured contend that the clause does not mean what it says: the insurers argue that the waiver of subrogation applies only with respect to claims covered by the policy. Because that interpretation would render the waiver meaningless, we hold that, when underwriters issue a policy covering an additional assured and waiving "all subrogation" rights against it, they cannot recoup from the additional assured any portion of the sums they have paid to settle a risk covered by the policy, even on the theory that the recoupment is based on the additional assured's exposure for risks not covered by the policy. 786 F.2d at 1302.

In *Marathon,* Marathon chartered a vessel from B & C Boat Rentals under an agreement requiring B & C to provide P & I insurance naming Marathon as an additional assured with waiver of subrogation. The underwriter was British Underwriters, and the P & I policy, by implication, only covered claims arising out of the operation of the vessel. A seaman on board the vessel was injured through the negligence of a crane operator employed by Marathon aboard a fixed platform owned by Marathon. The seaman filed two suits. The first suit was against Marathon in its capacity as charterer of the vessel, the vessel *in rem,* B & C, and the underwriters. The second suit was against Marathon in its capacity as the owner of the platform.

Unknown to Marathon, British Underwriters settled with the seaman for $60,000, with a collateral agreement that the seaman would pay British Underwriters the first $30,000 he recovered from Marathon. The district court held that these tactics did not violate any legal duty. On appeal, British Underwriters contended, as does Dow in this case, that the waiver of subrogation was co-extensive with the insurance coverage, and did not apply to Marathon in its capacity as platform owner. This court, in an opinion by Judge

Rubin, reversed and rendered judgment for Marathon, stating that "[b]ecause they had waived 'all subrogation,' British Underwriters could not have sued in their own name to recover from Marathon any part of the $60,000 they paid Tye, even on the theory that Marathon, in its uninsured capacity as platform owner, was contributorily liable as a joint tortfeasor." *Id.* at 1304.

Similarly, in *Wiley,* Offshore Painting obtained a marine hull policy issued by Continental Insurance Company insuring the M/V *Sandra P.* Chevron was named as an additional assured with a waiver by Continental of all rights of subrogation against Chevron. The *Sandra P* was destroyed through Chevron's negligence in the construction and operation of an offshore platform. Continental paid Offshore Painting $160,000 for the loss of the vessel, and obtained a judgment against Chevron for that amount. In its initial opinion, the panel affirmed on the same theory that Dow is arguing to this court—that the provisions in the insurance policies naming Chevron as an additional assured and waiving subrogation did not apply to Chevron's acts of negligence as a platform owner, as opposed to its acts as the operator of the vessels named in the policies. *See* 711 F.2d at 614. On rehearing, however, the panel withdrew this part of its original opinion, and reasoned as follows:

Chevron was, however, an additional assured on the hull policy on the SANDRA P issued by Continental. Because that hull policy covered a fire loss whether or not it resulted from Chevron's ownership or operation of the SANDRA P, it is applicable here, and prevents Continental from recovering from Chevron under the principle that an insurer may not recover from its insured. It follows that the district court was incorrect in awarding Continental indemnification from Chevron for the $160,000 it had paid Offshore Painting for the loss of the SANDRA P.

716 F.2d at 257. We think that *Marathon* and *Wiley* control the disposition of this issue.[6] Since Dow elected to self-insure,

---

6. Dow argues that this issue is controlled by this court's decision in *Wedlock v. Gulf Miss. Marine*

*Corp.,* 554 F.2d 240 (5th Cir.1977). *Wedlock,* however, is distinguishable from the case *sub*

Dow was, in effect, Chotin's hull underwriter for any damage to the barges. Dow, as Chotin's hull underwriter, also agreed to waive all rights of subrogation against Chotin. Having done so, Dow could not recover from Chotin damages for a loss covered by the hull policy, on the theory that the policy did not cover damages to the barges resulting from Chotin's operation of the *Sugarland.* Hence, the district court was correct that Dow's suit against Chotin for hull damage to the barges was a breach of the charter agreements.

The same analysis yields a different result, however, when applied to Dow's claim against Chotin for the loss of use of the barges, because this claim is not one that would have been covered by the insurance that Dow was contractually obligated to obtain. Dow contends, and Chotin apparently does not dispute, that neither standard hull nor standard P & I insurance would insure against claims based on loss of use of the barges, absent a special clause in the maritime insurance policy. *See* L. Buglass, *Marine Insurance & General Average in the United States* 440–43 (2d ed. 1981); *see also* 7 *Benedict on Admiralty* § 1.23 at 1–133—1–142 (7th ed. 1986) (loss of earnings clauses). We note that in *Marathon* and *Wiley,* the insurance would not have protected the co-assured with respect to liability arising out of the activity in which he was engaged—in both cases the operation of offshore platforms—but would have insured against the *type of risk* that occurred. In *Marathon,* the P & I insurance would have covered the injury to the seaman, and in *Wiley,* the hull insurance would have covered the fire damage to the vessel. In the case *sub judice,* however, neither the standard hull insurance nor the P & I insurance that Dow was obligated to obtain would have insured Chotin against the loss of use claim asserted by Dow. Hence, Dow was not Chotin's hull underwriter with respect to that claim. Since Dow was not Chotin's underwriter with respect to this claim, Dow was not prevented by the charter parties from suing Chotin for loss of use. Hence, we hold that the district court erred in holding that Dow's suit against Chotin for loss of use constituted a breach of Dow's obligations under the charter parties.[7]

### C. Chotin's Attorneys' Fees:

Since Dow could properly maintain a suit against Chotin for Dow's loss of use of the damaged barges, it was improper for the district court to award as damages all of the attorneys' fees incurred by Chotin in defending against Dow's claims. Instead, the district court should, in computing Chotin's attorneys' fees on remand, attempt to apportion those fees expended in defending against Dow's claim for hull damage, as

*judice.* In *Wedlock,* the issue before this court was only the scope of coverage under a P & I insurance policy, not the scope and effect of an underwriter's waiver of subrogation against an additional assured. *See id.* at 242. In *Wedlock,* the court correctly concluded that the P & I insurance on a tug did not cover a personal injury claim asserted against a charterer of the tug who was named a co-assured on the tug policy for acts of negligence arising out of the charterer's operation of a barge. *Id.* Unlike *Marathon* and *Wiley, Wedlock* did not involve an insurer who had waived subrogation against an additional assured attempting to recover from the additional assured monies paid on risks covered by the policy. Hence, we reject Dow's argument that *Wedlock* controls the disposition of this issue.

7. At oral argument, counsel for Chotin suggested that the force majeure clause in the fully found charter, see note 4, *supra,* operated to relieve Dow from liability for any negligence in its operation of the *Sugarland,* and that therefore Dow was not entitled to sue Chotin for loss of use. The district court rejected this argument, holding that under *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), the clause in the charter party purporting to relieve Chotin from liability for negligent towing was invalid as contrary to public policy. We agree. We note, however, that the clauses in the charter parties requiring Dow to name Chotin as an additional assured on the insurance policies do not run afoul of *Bisso. See Voisin v. O.D.E.C.O. Drilling Co.,* 744 F.2d 1174, 1178 (5th Cir.1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); *Hercules, Inc. v. Stevens Shipping Co.,* 698 F.2d 726, 738–39 (Former 5th Cir.1983) (en banc) (collecting cases). Hence, the force majeure clause in the charter party was ineffective, and therefore did not prevent Dow from suing Chotin for loss of use.

**1046**

opposed to those expended in defending against Dow's loss of use claim.

This leaves only the issue of the district court's award to Chotin of attorneys' fees spent in prosecuting its counter-claim against Dow to establish its right to indemnity from Dow under the charter party agreements. In awarding these fees, the district court erred. " '[U]nder a general indemnity agreement, . . ., the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification.' " *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 959 (5th Cir.1984) (quoting *Signal Oil & Gas Co. v. Barge W–701*, 654 F.2d 1164, 1178 (5th Cir. Unit A Sept. 1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982)). Hence, in computing Chotin's damages on remand, the district court should not award Chotin its attorneys' fees expended in prosecuting its counter-claim against Dow for indemnification.

### V.

For the above reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and this case is REMANDED. Each party is to bear its own costs.