United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 28, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 02-30352

———————————

CARGILL FERTILIZER, INC.,

Plaintiff-Appellant,

v.

PEARL JAHN OB; ANITA T DB,
their engines, tackle, apparel, etc., in rem;
GULFCOAST TRANSIT COMPANY;
ELECTRO-COAL TRANSFER CORPORATION;
ASSOCIATED TERMINALS INC;
ASSOCIATED MARINE EQUIPMENT LLC,

Defendants-Appellees.

———————————————————————————

Appeal from the United States District Court for the
Eastern District of Louisiana
(00-CV-1143-L)

———————————————————————————

Before JONES and BENAVIDES, Circuit Judges, and KAZEN, District Judge.[*]

PER CURIAM:[**]

The plaintiff-appellant, Cargill Fertilizer, Inc. (Cargill), had 3,000 tons of monocalcium

---

[*]Chief Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

phosphate (monocal), a livestock feed supplement, shipped from its facilities in Tampa, Florida, transferred to two river barges in Davant, Louisiana, and ultimately offloaded to its warehouse in Dubuque, Illinois. As the monocal was being discharged from a river barge into its warehouse in Dubuque, a crane operator discovered that it had been contaminated with various metals.

Cargill's theory of the case is that when the monocal was being transferred to the river barges in Davant, Louisiana, a Bobcat sweeper used in the transfer was the source of the contaminants. Based on the damages resulting from this contamination, Cargill sued *in rem* the transfer rig (ANITA T), which had transported the monocal from Davant, Louisiana to Illinois, and the ocean going barge (PEARL JAHN), which had transported the monocal from Tampa to Davant. Cargill sued *in personam* the owner of the ocean barge, Gulfcoast Transit Company (Gulfcoast), its sister corporation, Electro-Coal Transfer Corporation (Electro-Coal), and the owners of the ANITA T, Associated Terminals, Inc., and Associated Marine Equipment, L.L.C. (collectively Associated). Cargill also sued SGS Commercial Testing & Engineering Company (CT&E), the company it hired to inspect the cargo holds to determine whether they were clean and fit to receive the cargo. Prior to trial, Cargill settled with CT&E.

After a bench trial, the district court concluded that Cargill had failed to meet its burden of establishing the source of the contamination and was therefore unable to prove that any negligent acts by either Electro-Coal, Gulfcoast, or Associated proximately caused the contamination of the monocal cargo. Cargill appeals.[1]

---

[1] The court also denied the defendants' counterclaims for reimbursement for costs, expenses, attorneys fees and interest. That ruling has not been appealed.

Cargill argues that the district court clearly erred in holding that Cargill did not prove by a preponderance of the evidence that any of the defendants-appellees negligently caused the contamination of the monocal. The appellees do not dispute the damage Cargill alleged or that they had a duty to guard against the damage caused. The dispute centers upon whether Cargill proved by a preponderance of the evidence that the defendants negligently caused the damage.

In admiralty actions tried by a district court without a jury, the factual findings are binding unless clearly erroneous. *Coumou v. United States*, 107 F.3d 290, 295 (5th Cir. 1997), *modified on other grounds*, 114 F.3d 64 (5th Cir. 1997). We review questions of law de novo. *Id.* "The district court's rulings on negligence, cause, and proximate cause are findings of fact, while its determination of the existence of a legal duty is a question of law." *Coumou,* 107 F.3d at 295 (internal quotation marks omitted). However, if the district court's finding of negligence was based on an incorrect legal principle, the clearly erroneous test does not apply and we will disregard such findings. *See Dow Chemical Co. v. M/V Roberta Tabor*, 815 F.2d 1037, 1042 (5th Cir. 1987).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, (1948). "When . . . the district court is faced with testimony that may lead to more than one conclusion, its factual determinations will stand so long as they are plausible--even if we would have weighed the evidence otherwise." *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (internal quotation marks omitted). "Where the court's finding is based on its decision to credit the testimony of one witness over that of another, 'that finding, if not internally inconsistent, can virtually never be clear error.'" *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct.

3

1504, 1512 (1985)).

In support of its determination that Cargill failed to prove that the defendants caused the damage, the district court credited: (1) deckhand/flagman Chad Victoriana's deposition testimony that, prior to discharging the instant load of monocal, he inspected the Bobcat sweeper box and observed nothing in the box; and (2) the evidence indicating that the residual cargo gathered by the Bobcat sweeper while in the hold of the PEARL JAHN was dumped on the deck of the ANITA T and washed or swept overboard into the river.[2]

With respect to Chad Victoriana's testimony, the district court found as follows:

> First, there is direct evidence that the Bobcat sweeper was clean at the moment before it was lowered into the PEARL JAHN cargo hold. Associated's employee, Chad Victoriana, assigned as flagman onboard the ANITA T during the PEARL JAHN offload, testified that he thoroughly inspected the sweeper prior to lowering it into PEARL JAHN's number two hold. Victoriana testified that he personally checked the sweeper bristles . . . as well as the collection box. Specifically, Victoriana testified that he looked inside the collection box with a flashlight and saw nothing.
>
> Considering the quantity of material that would have to have been in the sweeper's collection box to so thoroughly contaminate the monocal as in this case, Victoriana certainly would have seen something in the collection box were it actually present.
>
> Victoriana also testified that he observed an Electro-Coal employee operate the Bobcat sweeper while it was on the deck of the ANITA T prior to it being lowered into the PEARL JAHN hold. Victoriana stated that when the operator dumped the collection box, nothing came out.

---

[2] The district court also stated that Cargill's argument-- that the variety of contaminants in the monocal indicated that the source of the contaminants had to be the Electro-Coal facility at Davant-- was weakened by the unexplained presence of safety glasses and links of chain. Because we find the district court's first two factual findings (particularly the first) dispositive of this appeal, we need not reach the challenge to this finding.

4

Cargill contends that Victoriana's testimony lacked credibility because of his inaccurate physical description of the sweeper that he allegedly inspected. Cargill asserts that although the sweeper had blue nylon bristles, Victoriana incorrectly described the bristles as made of steel. During Victoriana's deposition, counsel inquired "What's the brush made out of?" Victoriana responded that it was "[s]ome type of like steel, like, I believe." Counsel then inquired, "[l]ike a wire brush?" Victoriana responded "[s]omething similar to that. *I can't really remember.* I just remember looking at it, you know. I'm pretty sure it was some type of steel maybe." (emphasis added). In light of Victoriana's testimony that he could not "really remember" the bristles, we are not persuaded that such a mistake seriously calls into question Victoriana's credibility.

Cargill further contends that Victoriana's testimony is in conflict with the entirety of the evidence before the court. We must disagree. Other crew members, Darryl Naquin, Daniel Talley and William Taylor, testified that it was company policy or standard operating procedure to clean and inspect equipment, including a Bobcat sweeper, prior to use. Such testimony corroborates Victoriana's testimony that he inspected the sweeper.[3] Moreover, Victoriana testified that he remembered this particular job because it was the first time he had "been down to Electro-Coal, and the first time [he] ever unloaded a seagoing barge." As previously set forth, "[w]here the court's finding is based on its decision to credit the testimony of one witness over that of another, 'that finding, if not internally inconsistent, can virtually never be clear error.'" *Schlesinger*, 2 F.3d at 139

---

[3] We also note that there was testimony from crew members such as Todd Fernez and Naquin that they observed Bobcat sweepers used only with fertilizer or phosphate cargo, not cargo such as iron ore. Additionally, Rodney Palmer, the vice president of Electro-Coal, testified that the Bobcat sweepers were used only for sweeping phosphate and sand cargoes. He explained that it was impractical and unsafe for Bobcat sweepers to be used for sweeping up such cargoes as iron ore pellets. This testimony offers some support for Victoriana's testimony that the sweeper box did not contain contaminants such as iron ore.

(internal quotation marks omitted) (quoting *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512). Under these circumstances, we are not persuaded that the district court clearly erred in crediting Victoriana's testimony that, prior to discharging the instant load of monocal, he inspected the sweeper and observed no contaminants in the box or the bristles.[4] Of course, this factual finding eviscerates Cargill's theory of the case that the sweeper box was the source of the contaminants.

With respect to the evidence indicating that the residual cargo gathered by the Bobcat sweeper was washed or swept overboard into the river, the district court found that:

> the evidence suggests that any residual cargo collected by the sweeper while in the PEARL JAHN was not dumped into the river barge. Rather, the sweepings were removed from the PEARL JAHN hold with the clamshell bucket and the sweepings dumped on the deck of the ANITA T and eventually washed or swept overboard into the river. In this way, even if the Bobcat sweeper was lowered into the PEARL JAHN with a collection box full of HBI, coal, and pig iron sweepings from prior jobs, these materials would have been discarded into the river and would not have found their way into the river barge.

Cargill argues that the district court erroneously found that the monocal collected by the sweeper was discharged to the ANITA T's deck and washed overboard. Instead, Cargill insists the evidence shows that the monocal collected by the sweeper was dumped into a pile in the middle of the hold to be collected by the clamshell bucket and placed in the river barge. Cargill states that the ANITA T log indicates that for fifty minutes the Bobcat sweeper was working in the hold of the PEARL JAHN with the front end loader. Cargill contends that this demonstrates that the discharge

---

[4] Cargill also challenges Victoriana's testimony that he inspected the sweeper while it was on the *deck* of the PEARL JAHN. Cargill points to the deposition testimony of Robert Couvertier that, according to his normal practice, he would have placed the sweeper in hold number two rather than on the deck. Couvertier did not have an independent memory of this particular job. In any event, it is the fact that the inspection was conducted at all - - not the place of inspection - - that is the linchpin of Victoriana's testimony.

from the PEARL JAHN to the river barge continued while the loader and the sweeper were working in the hold.

While there certainly are conflicting interpretations to be gleaned from the evidence, there is evidence to support the district court's finding that the contents of the sweeper were washed overboard. As set forth above, when a district court is faced with evidence that may lead to more than one conclusion, its factual determinations will stand so long as they are plausible--even if this Court would have weighed the evidence otherwise. Our review of the evidence has not left with us with the definite and firm conviction that a mistake has been committed.[5]

In conclusion, we hold that the district court had sufficient evidence before it to find that Cargill did not prove by a preponderance of the evidence that any of the defendants-appellees negligently caused the contamination of the monocal. Accordingly, we conclude that the findings of the district court are not clearly erroneous and affirm the judgment.

For the above reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

[5] Cargill also argues that the district court held it to a higher than required standard of proof with respect to ruling out other sources of contamination. However, even assuming for purposes of this appeal that the district court invoked an improper standard, in light of its factual finding that the sweeper box did not contain the contaminants, we do not believe such an error requires a remand. Similarly, in light of the court's finding that the sweeper box was free of contaminants, we do not believe that any error with respect to the length of time the river barge was fleeted *after* the discharge at Electro-Coal has any effect on the outcome of this appeal.